## Commonwealth, Appellant, *v.* Thatcher.

Argued January 13, 1950. Before MAXEY, C. J., DREW, LINN, STERN, STEARNE and JONES, JJ.

*James B. Ceris,* Special Assistant District Attorney, with him *William Coghlan,* District Attorney, for appellant.

*John D. Ray,* with him *J. Frank Kelker* and *Reed, Ewing & Ray,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 20, 1950:

This is an appeal taken by the Commonwealth from the judgment of the court below sustaining the defendant's demurrer to a count charging murder and to a count charging voluntary manslaughter. On September 12, 1949, the grand jury returned against Robert E. Thatcher, a police officer of Beaver Falls, Beaver County, an indictment containing three counts: murder, voluntary manslaughter, and involuntary manslaughter. The victim named in the indictment was Sebastian Medaglia, Jr. At the conclusion of the Commonwealth's case counsel for defendant demurred to the evidence as to all counts in the indictment. The

court sustained the demurrer to the first and second counts and overruled the demurrer as to the count of involuntary manslaughter. The Commonwealth filed exceptions to the judgment sustaining the demurrer. The trial proceeded and the defendant was acquitted of involuntary manslaughter.

At 10:00 P. M. on July 8, 1949, Medaglia departed alone in his automobile from his home on 12th Street, Beaver Falls, with the intention of going to work at a restaurant located at 35th Street and 4th Avenue. He stopped at a restaurant at 19th Street and 7th Avenue. Thatcher, a city policeman then off duty, was, in company with his wife, driving his automobile northwardly along 7th Avenue, when at about 10:15 P. M. he stopped Medaglia's automobile, forcing the Medaglia automobile to the curbstone, both cars facing in the same direction. The defendant walked over to Medaglia's automobile and while talking to Medaglia shook his clenched fist at him. Both men then left and the next scene was at police headquarters at 10:25 P. M.

What took place at the police station is described in the opinion of the court below, as follows: "John G. Harrison, patrolman and desk clerk, said he was on duty at the desk, and Thatcher, who was not in uniform and not on duty, came into the police station in company with Medaglia. Thatcher informed Harrison that Medaglia ran through a stop sign and almost smashed into his car. Harrison advised Thatcher to write Medaglia up for going through the stop sign. Thatcher told Harrison he had a charge for disorderly conduct against Medaglia. Harrison said Medaglia made no response to these statements. Thatcher asked Medaglia for his driver's card and Harrison asked him for his cards and Harrison told Medaglia to give Thatcher the cards. Medaglia then said 'that is the way you damn cops are.' Harrison received a telephone call, and turned to the switchboard. Medaglia and Thatcher were talk-

ing very loudly, and Harrison asked them to be quiet. Harrison again turned to the telephone, and completed his conversation. When he turned around, he saw Thatcher alone, standing in front of the counter. He walked over to the counter, looked over it and saw Medaglia lying on the floor. The foregoing testimony is the only testimony in the record of the Commonwealth's case which throws light on the events which transpired in the police station."

"Shortly after the incident in the police station, two other police officers took Medaglia to the Providence Hospital, in Beaver Falls. He was examined by Anthony Aldo Conte, a medical student, employed by the hospital. Conte said he examined Medaglia, and found a certain amount of blood on the left front of his shirt, and a small abrasion in the upper lip on the left side . . . a small superficial V-shaped laceration from one-eighth to one-sixteenth of an inch on the upper lip."

At 11:00 P. M. the defendant went to the restaurant operated by Medaglia and informed the waitress that Medaglia would not be there and to close the restaurant for the night and that he had been placed under arrest for a traffic violation. The waitress then observed fresh blood on defendant's right hand and accused him of having struck Medaglia.

Medaglia returned home at about midnight and without undressing lay down upon a couch where he remained throughout the night. He was nauseated and complained of a pain in his head. The next day at noon a physician who examined him discovered that he had a cerebral concussion. At 6:00 P. M. Medaglia's condition grew worse and he was transferred to the hospital. He became unconscious. On July 11th a trephine operation was performed. Medaglia died on July 12th. A postmortem revealed that there was a massive sub-dural hemorrhage in the left hemisphere of the head; that there was dried blood clotted on the lips, and evidence

of a small laceration on the upper lip. The cause of death was a sub-dural hemorrhage, associated with a fracture of the skull in the occipital bone. At the Coroner's Inquest the defendant was held for the action of the grand jury and his indictment followed on September 12, 1949.

On this appeal from the judgment sustaining the defendant's demurrer to the counts charging murder and voluntary manslaughter, the first question which confronts us is this: The defendant having been acquitted of involuntary manslaughter on the same evidence that the Commonwealth offered to support the charge of murder and voluntary manslaughter, could the defendant be tried for murder and voluntary manslaughter even if we reversed the judgment of the court below sustaining the demurrer? This question is answered by the Act of March 31, 1860, P. L. 427, Section 51, 19 P. S. 831, which provides as follows: "If upon the trial of any person for any misdemeanor, it shall appear that the facts given in evidence amount in law to a felony, such person shall not by reason thereof be entitled to be acquitted of such misdemeanor; and no person tried for such misdemeanor shall be liable to be afterwards prosecuted for felony on the same facts, unless the court before whom such trial may be had shall think fit, in its discretion, to discharge the jury from giving any verdict upon such trial, and direct such person to be indicted for felony, in which case such person may be dealt with in all respects as if he had not been put upon his trial for such misdemeanor."

It is the contention of the appellee that when the court sustained the demurrers to the counts charging murder and voluntary manslaughter, it was the duty of the district attorney to elect at that time whether he wished to proceed with the trial of the defendant on the charge of involuntary manslaughter or request the Court to nolle pros the charge of involuntary man-

slaughter and then to appeal from the judgment of the court in sustaining the demurrer. The appellee contends that since the District Attorney elected to proceed to a verdict on the misdemeanor count, the Commonwealth is forever barred from trying the defendant for a felony growing out of the same facts. If appellee's contention is upheld the question of the court's judgment on the demurrer is now moot, for even if that judgment was reversed by us and the Commonwealth should attempt to retry the defendant on either of the first two counts, the defendant could successfully plead "autrefois acquit" because of the above quoted provisions of the Act of March 31, 1860.

That provision is so clear as to leave no room for doubt as to its meaning. The defendant was tried for a misdemeanor, to wit, involuntary manslaughter. Applying the above provision of the Act to this case the defendant shall not "be liable to be afterwards prosecuted for felony on the same facts," unless the court discharged the jury before it returned a verdict on the misdemeanor charge. This the court did not do. Therefore, the defendant cannot be tried for a felony on the same facts because Section 51 of the Act of 1860 forbids it.

The double procedure which Section 51 of the Act of 1860 forbids would lead to results which are both absurd and unjust. For example, if X was indicted for involuntary manslaughter (i. e. unlawfully killing Y) and also for murder (i. e. maliciously killing Y) and was acquitted on the first charge and then tried on the second charge, the jury would (but for the Act of 1860) have the power to find that though one jury had declared that X had *not unlawfully* killed Y, *it* could find X had killed Y *maliciously*. The two verdicts would be inconsistent. The first verdict would negative the contention that X had unlawfully killed Y, while the second verdict would affirm the contention that X had

unlawfully killed Y, because if he killed him maliciously he must have killed him unlawfully. The verdict would be as absurd as it would be to acquit a man on a charge of driving his automobile at the "unlawful" rate of speed of 60 miles per hour and then later convict him for driving his automobile at the same place and time at the "malicious speed" of 120 miles per hour.

The double prosecution would also be unjust because it would force the defendant to reveal on his trial for involuntary manslaughter what his defense was and then when he was tried for murder, the Commonwealth would know how to meet the defendant's evidence and also how to strengthen any part of its case which had proved to be weak in the first trial. Such a procedure is not in accordance with the American idea of fair play and it would be contrary to established standards of just procedure. Furthermore, if the defendant should be convicted on the same state of facts, of both involuntary manslaughter *and also* of voluntary manslaughter or of murder he would be subject to punishment for *both* offences. Even if the court should suspend sentence on the conviction of involuntary manslaughter (and the court would be under no obligation to do so) the defendant would still have on his record two convictions for one crime. Section 51 of the Act of 1860 was obviously intended to prevent such an anomalous situation as we have just described and to obviate the unjust results that would follow from allowing prosecution and conviction for *two* crimes, on *one state of facts*. It is a principle of the criminal law that the greater crime includes any lesser crime which is one of its constituents and if the Commonwealth tries a defendant for a crime which is a constituent of a greater crime it is estopped from prosecuting the defendant for the greater crime. The basic constituent of the crime of voluntary manslaughter and of murder is the unlawful killing of a human being. Since this defendant was acquitted of the

unlawful killing of Medaglia he is entitled to plead that acquittal in bar of any prosecution for the murder or voluntary manslaughter of Medaglia, based upon the same facts. When the jury found the defendant *not guilty* of involuntary manslaughter it negatived the charge that he had killed Medaglia unlawfully, and that finding must be accepted. No jury at any subsequent criminal trial of this defendant has any power to overturn it.

In *Commonwealth v. Arner,* 149 Pa. 35, 24 A. 83, this Court held that: "A verdict of acquittal or conviction on an indictment for the minor offence, is a bar to a trial on an indictment for a crime which includes it. On this point the rule is thus stated in Am. & Eng. Ency. of Law, Vol. 11, p. 939: 'Where a greater offence includes a lesser one, being placed in jeopardy under an indictment for the included offence only, constitutes a bar to a prosecution for the greater offence.' "

In that case two indictments were found against the appellant for one act of unlawful carnal intercourse. One indictment charged him with fornication and bastardy, and the other with rape as defined by the Act of May 19, 1887, P. L. 128. He was tried for fornication and bastardy but before the verdict was returned he was required to plead to the indictment for rape. He replied "not guilty and once in jeopardy". The court ruled that the plea was not good and the trial proceeded. There was a verdict of guilty in each case. He was sentenced on each conviction. From the judgment on the conviction of rape he took an appeal. This Court applied Section 51 of the Act of 1860 and reversed the judgment. There is a close analogy between that case and the case now before us [1] and what this Court said as to the verdict on

---

[1] Just as an unlawful killing is an essential constituent of murder or of voluntary manslaughter, so unlawful intercourse is an essential constituent of rape; if the allegation of unlawful intercourse is negatived by a jury on a defendant's trial for fornication that finding

the indictment for the minor offence barring the trial for the greater offence on the same state of facts is applicable here.[2] In Henry's Second Edition of Sadler's Criminal Procedure in Pennsylvania, Sec. 594, at page 690, the author says: "Since the court is given this power,[3] the defendant is in jeopardy for the more serious offense when tried for the misdemeanor, and cannot consequently be tried for the felony, though the minor offense be submitted to the jury."

If we reversed the judgment of the court below in sustaining the demurrer in this case the defendant could not, because of Section 51 of the Act of 1860, supra, be tried for either murder or voluntary manslaughter on the same facts, and therefore our action would have no legal effect. Accordingly, we will not pass on the question of whether or not the court erred in sustaining the demurrer, but will grant the motion to quash the appeal.

The appeal is quashed.

precludes the conviction of the defendant for rape on the same state of facts, because an essential element of rape, to wit, unlawful intercourse, has been taken out of the case.

[2] See also Com. v. Kammerdiner, 165 Pa. 222, 30 A. 929; Com. v. Moon, 151 Pa. Superior Ct. 555, 30 A. 2d 704, in accord.

[3] Referring to Section 51 of the Act of 1860, supra.