**Commonwealth v. Group Two Properties Inc.**

*Heather A. Castellino, deputy attorney general,* for Commonwealth.

*David A. Richman,* for defendants Snyder and Group Two Properties Inc.

*Lawrence J. Hracho,* for defendant Smith.

*Emmanuel H. Dimitriou,* for defendant Gerber.

BUCCI, *J.,* June 21, 2005—This case commenced on December 22, 2003, when the attorney general's office charged each of the above-listed defendants with two counts of operating a hazardous waste storage, treatment or disposal facility without a permit from the Department of Environmental Protection (DEP) in violation of 35 Pa.C.S. §6018.401(a). The defendants filed an omnibus pretrial motion for relief nunc pro tunc,

which included a motion in limine to exclude the evidence of scientific testing on environmental samples, and a hearing on this motion was held before this court, beginning on September 29, 2004, and continuing on March 28, 2005. This court ultimately granted the defendants' motion, and it is from this order that the Commonwealth now appeals.

At the court's direction and on behalf of the Commonwealth, the attorney general's office filed a concise statement of matters complained of on appeal pursuant to 42 Pa.C.S. §1925(b). In this concise statement, the sole issue raised on appeal is whether the court erred in granting the defendants' motion to exclude said evidence at trial. As a preliminary matter, the court notes that the Commonwealth's appeal is permissible under *Commonwealth v. Cohen,* 529 Pa. 552, 605 A.2d 1212 (1992), which allows for the appeal of a motion in limine where the Commonwealth certifies that the court's ruling "had the effect of terminating or substantially handicapping the prosecution." *Commonwealth v. Deans,* 530 Pa. 514, 517, 610 A.2d 32, 33 (1992).

## MOTION TO EXCLUDE EVIDENCE

Following the two-part hearing, findings of fact and conclusions of law were made part of the record, and we hereby incorporate those findings and conclusions into this opinion, attached hereto as "exhibit A" [not published herein], and further supplement them as follows:

It is alleged that the defendants directed others to bury hazardous materials on certain property then owned by Group Two Properties, formerly owned by Reading Industrial Scrap Inc. (the RISCO site). Between August

21 and 26 of 2002, agents of the Office of the Attorney General and of the DEP executed a search warrant at the RISCO site, and as part of this search, material was removed from the site. Tests were performed on samples of this excavated material, and the test results allegedly show that the site, or portions of the site, contained higher than permissible concentrations of lead and silver. These samples were taken during an ongoing criminal investigation. During the pending criminal investigation, but prior to the formal filing of charges, the DEP disposed of the samples taken from the site, thus rendering them unavailable for the defendants to conduct their own independent testing. To further complicate matters, prior to the charges being filed, the DEP began to remediate the site, so that it was impossible for the defendants to obtain their own samples after they were charged.

In granting the defendant's motion, the court considered two issues: first, whether the defendant's due process rights were violated by the unavailability of the actual samples collected and tested by the DEP, rendering it impossible to attack the validity of those specific test results and, second, whether the fact that the defendants may have had the opportunity to conduct their own test results on different samples taken from the same site would remedy any due process violation.

The Pennsylvania Supreme Court, in *Commonwealth v. Deans,* held that the due process clause of the Fourteenth Amendment entitles the defendant in a criminal case an opportunity to conduct an expert examination of physical evidence that is critical to the issue of guilt. 530 Pa. 514, 610 A.2d 32 (1992). The court held that

if the Commonwealth loses or discards the physical evidence without having given the defendant access to it, then it may not introduce expert testimony as to the test results. There is no dispute that the actual soil samples tested by the DEP have been destroyed and are therefore unavailable to the defendants. Additionally, counsel for the Commonwealth conceded that it would have been impossible for the defendants to obtain their own samples after being charged, because by that point in time the DEP had already begun remediation at the site. For the same reason, it was impossible for the Commonwealth to provide the defendants with soil samples upon their request. At the hearing, counsel for the Commonwealth addressed this issue: "If you are saying why don't we get a sample when we have a discovery request, it was too late. Remediation of the property was also in process. We started to clean up the property before the criminal charges were filed. It is impossible to get another sample on the same spot." (NT, pretrial, 9/29/04, p. 16.) The situation is therefore akin to that in *Deans,* where "the prosecutor conducted an examination and is attempting to introduce the results of his examination as evidence against the defendant while denying to the defendant any possible benefit to be derived from an examination of the primary evidence in the case." 530 Pa. at 519, 610 A.2d at 34.

The fact that the original samples are no longer in existence also distinguishes the case at bar from *Commonwealth v. Arenella,* 306 Pa. Super. 119, 452 A.2d 243 (1982), where the evidence at issue was still in existence and available for testing.

The Commonwealth relied on *Trombetta* at the hearing, but that case is also factually distinguishable. See *California v. Trombetta,* 467 U.S. 479 (1984). *Trombetta* involves the results from a "breathalyzer" test, which both California and Pennsylvania courts have specifically held to be both precise and reliable. *Id.* at 489. This reliability was a substantial factor in the court's conclusion that the evidence was not even potentially exculpatory. Ultimately, the court held that evidence need not be preserved unless (1) its exculpatory value is apparent prior to destruction and it is (2) "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable available means." 467 U.S. at 489. Results from breathalyzer tests showing that the defendant has a blood alcohol level above the legal limit are not even potentially exculpatory due to the extremely high degree of reliability. This is simply not true of the testing performed in the case at bar. According to the testimony by both parties at the pretrial hearing, there is actually a high degree of variability associated with TCLP testing. (NT, pretrial, 9/29/04, pp. 71-72; NT, pretrial, 3/28/05, pp. 14-15.) Unlike the results from laboratory analyses of breath and blood for the presence of alcohol, results from analyses implementing TCLP methodology for characteristic toxicity lack precision and are not reproducible with great certainty. (NT, pretrial, 9/29/04 at 71-72.) TCLP methodology produces results that are subjective and much more likely to be inconsistent. As such, the introduction of expert evidence based upon the results of analyses implementing TCLP methodology by the Commonwealth would violate the defendants' due process rights. See *Deans* at 521-22, 610 A.2d at 35.

There was evidence at part two of the hearing that the defendants had access to the site and further may have had their own testing done. (NT, pretrial, 3/28/05, pp. 30-31.) We submit that this does not remedy the due process violation in this particular case, both because of the nature of the samples and the type of testing performed. Unlike a blood alcohol test, which, in addition to being highly reliable, is also testing a homogeneous substance, here we have a large parcel of real property containing an incalculable variety of organic and man-made materials, some of which may present in one area and not present in others. Even if the defendants had access to the property and even if they were able to collect some of their own samples, the due process issues remain. Without the original samples, there is no way to challenge the tests done by the Commonwealth. The defense could theoretically gather thousands of samples from the RISCO site, and the test results from these samples would neither prove nor rebut the results of the DEP's original tests. The fact that other samples may not have elevated levels of lead or silver does not mean that the samples tested by the Commonwealth did not, as there is no guarantee that hazardous materials would be uniformly present or absent throughout the site. Conversely, should additional testing by the defense yield similar results, this would not *prove* that the Commonwealth's initial tests were accurate, but would only bolster them. In short, the purpose of splitting samples is not only to see if the results are consistent, but also to "test the test." In holding that the trial court erred in allowing the Commonwealth to introduce the expert testimony, the Superior Court in *Common-*

554

*wealth v. Dorsey,*[1] 266 Pa. Super. 442, 405 A.2d 516 (1979), cited in *Arenella, supra* at 123, 452 A.2d at 246, reasoned that "it is most 'exceptional' when the Commonwealth asks a defendant to accept the word of one of its witnesses." The same reasoning applies here. The defendants should not have to rely on the results *or the methodology* employed by the prosecution's witnesses, particularly where these test results form the entire basis for the Commonwealth's case.

Thus, this court concluded that to allow evidence of the results of the Commonwealth's tests, where the Commonwealth had destroyed the samples and had never made them available to the defendants, would be a violation of the defendants' due process rights. Accordingly, we respectfully request that the Commonwealth's appeal be denied.

---

1. *Commonwealth v. Dorsey* and *Commonwealth v. Arenella* were both decided under Rule 310, which placed much more stringent requirements on the defense to demonstrate "exceptional circumstances and compelling reasons" to obtain discovery in such matters. Under the current rule, Rule 305, the defendants would be entitled to even more in the way of pretrial discovery.