576 A.2d 1082

**COMMONWEALTH of Pennsylvania**

v.

**Gary Raymond BARTLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 30, 1990.

Filed June 12, 1990.

Stephen Delpero, New Wilmington, for appellant.

William M. Panella, Dist. Atty., New Castle, for Com., appellee.

Before ROWLEY, TAMILIA and BROSKY, JJ.

TAMILIA, Judge:

On February 16, 1989, appellant was convicted by a jury of two counts each of robbery[1] and criminal conspiracy.[2] His post-trial motions were denied and he was sentenced in open court on November 3, 1989, but the judgment of sentence was not entered on the docket until November 15, 1989. Appellant filed his notice of appeal on December 5, 1989. Before discussing the merits of the appeal, we need to address the question of timeliness.[3]

A notice of appeal must be filed within 30 days "after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). There has been much confusion over when the appeal period actually begins, however, because the meaning of the word "entry" in Rule 903(a) is unclear.

To further muddy the waters, the line of cases attempting to clarify the issue are sometimes in apparent conflict with Pa.R.A.P. 108, Date of Entry of Orders, and the cases explaining that rule. Rule 108 provides, inter alia:

(a) General Rule.

(1) Except as otherwise prescribed in this rule, in computing any period of time under these rules involving the date of entry of an order by a court or other government unit, the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties, or if such delivery is not otherwise required by law, the day the clerk or office of the government unit makes such copies

1. 18 Pa.C.S. § 3701(a)(1)(ii).

2. 18 Pa.C.S. § 903(a)(1) and (a)(2).

3. Neither appellant nor the Commonwealth has raised this issue but we may raise it sua sponte as it is a question of jurisdiction. *Andursky v. Andursky,* 382 Pa.Super. 1, 554 A.2d 571 (1989).

public. The day of entry of an order may be the day of its adoption by the court or other government unit, or any subsequent day, as required by the actual circumstances. This Court, in *Commonwealth v. Dorman*, 272 Pa.Super. 149, 414 A.2d 713 (1979), held that the trial court gave the phrase "adoption by the court" in Pa.R.A.P. 108 full effect when it sentenced defendant and told him he had 30 days from that day to appeal. The Court also stated there is no requirement in criminal cases that the date of entry is the date the notice notation, required under Pa.R.C.P. 236(b), is entered on the docket—unlike in civil cases.[4] *Id.* Similarly, in *In re Fourth Statewide Investigating Grand Jury*, 510 Pa. 496, 509 A.2d 1260 (1986), the Supreme Court held that because: (1) the defendant and his counsel were present on September 24, 1985 when the contempt finding was made and sentence imposed; (2) a written order dated September 24, 1985 embodied the finding; and (3) the Order was effective as of that date, "[c]learly, September 24, 1985 was the day on which the order was 'adopted' by the court and the date governing the beginning of the appeal period." *Id.*, 510 Pa. at 501, 509 A.2d at 1262. We note, however, that in *Fourth Statewide Investigating Grand Jury*, no mention is made of the entry of the Order on the docket.

However, our Supreme Court, in *Commonwealth v. Cavanaugh*, 500 Pa. 313, 456 A.2d 145 (1983), gave, what we believe to be a clear definition for time of appeal and if followed, provides uniformity for the tolling of appeal periods. "When the defendant appeals from a judgment of sentence, the time for appeal runs from the date that the court imposes sentence, informs the defendant of his or her right to appeal within thirty days, *and* enters the judgment on the docket." *Id.*, 500 Pa. at 315, 456 A.2d at 146 (emphasis added). *See also Commonwealth v. Ferguson*, 381 Pa.Super. 23, 552 A.2d 1075 (1988), where we followed *Cavanaugh, supra,* and explained that "the thirty day period for filing notice of appeal commences upon formal

---

4. The reason for distinction is that civil cases frequently are taken under advisement at the end of the case, and weeks may elapse before an Order is entered, hence the necessity for Pa.R.C.P. 236(b).

entry of judgment of sentence, rather than when the sentence to be entered was first announced in open court." *Ferguson, supra,* 381 Pa.Superior Ct. at 27, n. 1, 552 A.2d at 1077, n. 1. Until the judgment is entered on the docket, the appeal period has not begun. Since appellant in the instant case filed his notice of appeal within 30 days of the docket entry, this appeal is timely.

 The robberies occurred on September 13, 1988 when appellant and his brother, Fred Bartley, robbed the Country Fair Food Mart at 7:51 p.m. and the Dairy Food Mart at 8:26 p.m., both stores located in New Castle. Appellant raises two issues: 1) whether the court erred in refusing to allow appellant to question his brother as a hostile witness and introduce Fred's criminal record; and 2) whether the court erred in admitting certain physical evidence recovered from appellant's vehicle.

As to his first issue, appellant claims he was "surprised" by his brother's testimony at trial because it differed from a prior written statement and if Fred had testified as expected, the introduction of the criminal record would have been proper. The prior statement Fred had made to police was a confession to the robberies and implication of appellant in planning them and driving the getaway car. At appellant's trial, however, Fred testified on direct examination as a defense witness that he never discussed robbing the Country Fair with his brother. Fred repeated this assertion on cross-examination and on redirect he claimed he really didn't remember anything about the night because of alcohol consumption. The trial court denied appellant's request to declare Fred Bartley a hostile witness because the court disbelieved appellant's assertion of surprise. Appellant called Fred as a witness even though appellant had not previously discussed with him his proposed testimony nor had he received any indication as to what Fred's testimony would be. Moreover, Fred's testimony was not harmful to appellant but beneficial because it tended to exculpate appellant.

■ While we recognize appellant's argument that the Federal Rules of Evidence allow any party to impeach any witness, that is not the law in Pennsylvania. The trial judge has discretion in allowing defense counsel to cross-examine his own witnesses. *Commonwealth v. McKendrick*, 356 Pa.Super. 64, 514 A.2d 144 (1986). We find the trial court did not abuse its discretion in denying appellant's request to cross-examine Fred as a hostile witness.

It is established that counsel may cross-examine his own witness on a plea of surprise when the witness has given testimony which was unexpected, contradictory to statements which the witness had made earlier, and harmful to the party calling the witness and beneficial to the opposing side.

*Commonwealth v. Smith*, 511 Pa. 343, 353, 513 A.2d 1371, 1376 (1986).

We agree with the trial court that the claim of "surprise" is diminished when counsel did not previously interview the witness for a statement. In addition, the testimony was not harmful to appellant nor beneficial to the Commonwealth. Since the denial of appellant's request was proper, we need not address whether appellant should have been allowed to impeach Fred with his criminal record.

■ As to appellant's second issue, he argues the court erred in admitting items found in his car as fruits of the robberies when no proper foundation was ever laid. The items were introduced through Officer Book who was the arresting officer but appellant argues the chain of custody was not established because it had no beginning point.

On the evening of the robberies, Officer Book received a radio call reporting the robbery at the Country Fair Food Mart. He arrived at the scene, got a description of the getaway car and began to cruise the area in search of the vehicle. As he did so, he received another call, this one regarding the robbery at the Dairy Food Mart. While en route, he observed a vehicle matching the description of the getaway car and he stopped the vehicle. Officer Book saw

several items in the car (now at issue) and arrested appellant who was the driver. Within two minutes, Officer Book was replaced by Lieutenant Abraham so that Officer Book could continue on to the Dairy Food Mart to investigate the second robbery.

On the day of trial, Officer Book removed the items from the police department's evidence locker and brought them with him to the courthouse. He identified the items on direct examination as the ones he observed in appellant's car.

The standard for establishing a chain of custody for admission of physical evidence was stated by the court in *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980):

> The admission of demonstrative evidence is a matter committed to the discretion of the court ... Furthermore, there is no requirement that the Commonwealth establish the sanctity of its exhibits beyond a moral certainty ... Every hypothetical possibility of tampering need not be eliminated; it is sufficient that the evidence, direct or circumstantial, establishes a *reasonable inference* that the identity and condition of the exhibit remained unimpaired until it was surrendered to the trial court ... Finally, physical evidence may be properly admitted despite gaps in testimony regarding its custody....

*Id.* at 631–32, 414 A.2d at 1387 (citations omitted). *Commonwealth v. Bruner*, 388 Pa.Super. 82, 99, 564 A.2d 1277, 1285 (1989) (emphasis in original).

The testimony of Officer Book was sufficient to establish at least a reasonable inference the identity and condition of the exhibits remained unimpaired. We agree with the court that the items were not the type easily tampered with or altered, nor would there be a purpose in doing so.

Judgment of sentence affirmed.