596 A.2d 1253

**In re Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for Legislative Route 1040, Section 2, a Limited Access Highway, in the City of Pittsburgh.**

**COMMONWEALTH of Pennsylvania, Department of Transportation, Appellant,**

**v.**

**PIKUR ENTERPRISES, INC., Appellee.**

**In re Condemnation by the Commonwealth of Pennsylvania, Department of Transportation, of Right of Way for Legislative Route 1040, Section 2, a Limited Access Highway, in the City of Pittsburgh.**

**PIKUR ENTERPRISES, INC., Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, Department of Transportation, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 14, 1991.

Decided Aug. 21, 1991.

116

Jeffrey L. Giltenboth, Sr. Asst. Counsel, for appellant/appellee, Com.

Leonard M. Mendelson, for appellee/appellant, Pikur Enterprises, Inc.

Before PELLEGRINI and KELLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

This consolidated appeal arises out of the Commonwealth of Pennsylvania, Department of Transportation's (DOT) condemnation of real property at East Ohio Street in Pittsburgh, Pennsylvania.

On January 3, 1985, DOT filed a declaration of taking in fee simple of, *inter alia*, the real property of Pikur Enterprises, Inc. (Pikur) at 912–914 East Ohio Street.

On March 8, 1985, Pikur filed a petition for the appointment of a Board of Viewers (Viewers) alleging, *inter alia*, that the condemned real property at 912–914 East Ohio Street was used by Pikur "for a unified purpose" together with property at 1006–08 Chestnut Street, Pittsburgh and claimed damages to both parcels of real estate in accordance with Section 605[1] of the Eminent Domain Code

1. 26 P.S. § 1–605, entitled "Contiguous Tracts; unity of use" provides: Where all or a part of several contiguous tracts owned by one owner is condemned or a part of several non-contiguous tracts owned by one owner which are used together for a unified purpose is condemned, damages shall be assessed as if such tracts were one parcel.

(Code)[2] and special damages for displacement under Section 601A.[3]

At the Viewers' hearing, by agreement of counsel, the testimony was limited only to damages to the real estate which the Viewers, applying the unity of use doctrine, found by their report, dated December 17, 1985, to be $140,000.00. DOT, on January 10, 1986, appealed to the trial court alleging that the Viewers' application of the doctrine of unity of use was improper, and Pikur on January 15, 1986 likewise appealed on the grounds of inadequacy of damages. The case was tried to a jury which found, in answer to special interrogatories, that the real estate was subject to the unity of use doctrine and awarded damages in the amount of $180,000.00.

Instead of proceeding with post-verdict motions, DOT and Pikur entered into an "Agreement of Settlement" whereby Pikur would turn over possession of "all properties occupied by Pikur located on East Ohio Street ... to DOT by ... 4:00 p.m. on April 10, 1987...." (Paragraph 1) DOT, in turn, agreed to pay certain sums of moneys to Pikur which are set forth in paragraphs 2, 3, 4, 5, 6, 7, 10, 11. Included in said paragraphs was a timetable for such performance as required by Pikur and the making of payment by DOT.

Paragraph 8 provided, as follows:

8. All claims against DOT which Pikur may have regarding machinery, equipment, inventory and other personal property located at the East Ohio Street properties occupied by Pikur shall not be waived but shall remain open for further negotiations or litigation. In any such litigation, DOT will acknowledge that Pikur is entitled to

2. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. § 1–605.

3. 26 P.S. § 1–601A, referring to moving and related expenses of displaced persons, provides:

. . . . .

(b) Any displaced person who is displaced from his place of business ... shall be entitled, ... to damages for dislocation of such business ... [There then follows methods for determination of such damages].

receive the difference between the value in place of its machinery, equipment, inventory and other personal property and the amount paid to Pikur therefor pursuant to this Agreement. Any additional machinery, equipment, inventory or other personal property found to exist during the final inventory that was used in the East Ohio Street operation shall be appraised by DOT and any increase in DOT's opinion of value shall be paid to Pikur within two (2) months of Pikur's executing the proper form(s) authorizing payment for such increase. The appraisal shall be completed and submitted to DOT within forty-five (45) days from April 10, 1987 and DOT will notify Pikur of receipt thereof.

Paragraph 14 provided as follows:

14. If either party is tardy in payment of any amount hereunder, the delinquent amount shall bear interest at the rate of three (3%) per cent per week. If legal proceedings are instituted after thirty (30) days following delinquency, the prevailing party shall be entitled to receive reasonable legal fees and expenses....

This "Agreement of Settlement" was filed of record in the within proceeding on April 20, 1987.

On June 3, 1988, Pikur filed an amendment to its March 8, 1985 petition for appointment of Viewers, in which it was alleged: that the foregoing "Agreement of Settlement" was executed on April 7, 1987; that DOT paid Pikur the amounts provided for in paragraphs 2, 3, 4, 5, 6, 7, 10 and 11 of said Agreement together with delinquent charges; that DOT was in violation of paragraph 8, *supra*, in that the appraisal of the additional machinery, equipment, inventory and other personal property was not completed and submitted to DOT within 45 days from April 10, 1987 as required by the "Agreement of Settlement" and DOT has never notified Pikur of its receipt, as required by the "Agreement of Settlement," and DOT has made no payment to Pikur therefor; that DOT's appraisers did find on the premises of Pikur additional machinery, equipment, inventory and other personal property which was left on the

premises when possession was delivered to DOT on April 10, 1987; that in addition, other items of machinery, equipment, inventory and personal property for which DOT had paid Pikur were appraised and paid for by DOT at substantially less than their true value.

Pikur, pursuant to paragraph 14 of the "Agreement of Settlement," sought, by its amended petition, (1) the value of the machinery, equipment, inventory and other personal property for which DOT had not paid Pikur; (b) the difference between the value in place of the machinery, equipment, inventory and other personal property for which DOT has paid Pikur and the amount paid Pikur therefor; (c) interest on the foregoing amounts at the rate of three (3%) per cent per week from July 25, 1987 to the date payment is received; and, (d) reasonable legal fees and expenses pursuant to paragraph 14 of the "Agreement of Settlement," said reasonable legal fees to be in the amount of forty percent (40%) of the sum received through settlement or litigation, after deduction of expenses, including appraisal fees, as provided in the Power of Attorney between Pikur and its attorneys.

DOT filed preliminary objections to Pikur's amendment to petition for appointment of Viewers on the ground that the non-eminent domain matters asserted by Pikur, i.e., 3% weekly interest, reasonable attorney's fees and expenses and claims arising out of the alleged breach of the "Agreement of Settlement" are exclusively for the Board of Claims [4] and are "outside of the jurisdiction of the Board of Viewers."

Notwithstanding DOT's outstanding preliminary objections, the Viewers conducted a hearing on Pikur's amended

4. The Board of Claims is afforded exclusive jurisdiction under Section 4651-4, 72 P.S. § 4651-4, which provides in pertinent part:
   The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more....
   There is no dispute between the parties that the "amount in controversy," relating to the contract claims in the "Agreement of Settlement," exceeds $300.00.

petition and, on May 1, 1989, filed a supplemental report.[5] The Viewers made an award, as follows:

That the value in place of the condemnee's inventory on April 10, 1987, the date of delivery of possession of the premises by the condemnee to the condemnor, was $500,-000.00, against which sum the condemnor is entitled to credit in the sum of $296,035.00, leaving a balance owing of $203,965.00.

That the value in place of the machinery and equipment on April 10, 1987 was $24,200.00, against which sum the condemnor is entitled to credit in the sum of $19,839.00, leaving a balance owing of $4,361.00.

That the value in place of the condemnee's tangible personal property other than machinery and equipment on April 10, 1987 was $500.00, against which the condemnor is entitled to no credit.

That the condemnee is entitled to interest at the rate of 3% per week on the sum of $208,826.00 awarded as above from 60 days after the filing date of the award if no appeal is taken.

That the condemnee is entitled to reasonable attorneys fees of 40% of the amount awarded as above plus 40% of the interest thereon plus expenses for expert witness fees as shall be documented by claimant.

On May 4, 1989, Pikur filed an appeal from the supplemental report of the Viewers for the reasons that (a) the award of the Viewers is inadequate compensation for the damages which Pikur sustained; (b) the value in place of Pikur's inventory on April 10, 1987 was substantially in excess of the sum of $500,000 awarded by the Viewers; (c) the value in place of Pikur's machinery and equipment on April 10, 1987 was substantially in excess of the sum of $24,200 awarded; (d) the value in place of Pikur's tangible

5. In their report the Viewers wrote that DOT filed preliminary objections challenging the jurisdiction of the Viewers to hear Pikur's claim for interest based on the contention that exclusive jurisdiction was vested in the Board of Claims and further noted that the preliminary objections were argued before the Court but were not ruled on by the Court.

personal property other than machinery and equipment on April 10, 1987 was substantially in excess of the sum of $500 awarded by the Viewers; (e) the Viewers erred in failing to award any damages to Pikur for its intangible personal property; and (f) the Viewers erred in awarding interest at the rate of 3% per week from 60 days after the filing date of the award if no appeal is taken, and in failing to award interest at said rate from July 25, 1987.

On May 17, 1989, DOT also filed an appeal from the supplemental report of the Viewers for the reasons (a) of the Viewers assuming jurisdiction over matters to which preliminary objections "are still outstanding" and thus the Viewers could not and should not have awarded any amounts of money for 3% interest per week or reasonable attorney's fees; (b) that the award of $500,000 for the inventory was excessive; and (c) the award of $24,200 for machinery and equipment was excessive.

At the time DOT filed its appeal from the Viewers' supplemental report on May 17, 1989, there was properly before the trial court the issue of the amount of damages awarded to Pikur which was raised by both DOT and Pikur. In addition, DOT raised the issue of Viewers having the authority to determine the contractual damages of 3% interest per week and reasonable attorney's fees.

With the record as aforesaid, the issues raised by both Pikur and DOT, by their appeals from the Viewers' supplemental award, were ripe for determination by the trial court. However, Pikur, at a date not revealed by the record, filed a paper of record with the trial court, bearing the label "Petition For In Limine Determination" (Petition In Limine). In this Petition In Limine, Pikur alleged that (a) the additional compensation owing for the machinery, equipment, inventory and other personal property found to exist during final inventory as provided for in the Agreement of Settlement amounted to $24,876.00, which was paid by DOT on September 15, 1988, which was not timely as required by paragraph 8 of the agreement of settlement; (b) under paragraph 8 of the Agreement of Settlement, the

appraisal of the machinery, equipment, and inventory was to be completed and submitted to DOT within 45 days from April 10, 1987, and payment was to have been made within two months thereafter, i.e., July 25, 1987, which was not done. Pikur made demand for late payment at 3% per week and DOT did make such payment on February 27, 1989 to Pikur in the amount of $44,348.00, being the 3% interest for $59^3/_7$ weeks on the aforesaid $24,876.00; (c) that the total delay in payments amounted to $69,224.00, being made up of $24,876.00 principal and $44,348.00 interest, as aforesaid; (d) that the Power of Attorney between Pikur and its attorney provides for a contingent fee of 40%. Pikur by its Petition In Limine requests the court "enter an In Limine Order requiring the Commonwealth to pay your Petitioner the sum of $27,689.00" being reasonable attorney's fees of 40% on $69,224.00.

DOT filed a motion to dismiss the Petition In Limine on the grounds that the jurisdictional question, i.e. such claim must be heard by the Board of Claims and not the Viewers or trial court—had not been decided although properly brought and pending before the trial court.

At a time not revealed in the record, Pikur's Petition In Limine and DOT's motion for dismissal came before Martin, J. of the trial court. Again the record does not reveal what transpired before Martin, J., except what appears in the order by Martin, J. which is as follows:

AND NOW, to wit, this 16th day of August, 1989, upon consideration of Condemnee's Petition for In Limine Determination, arguments of counsel, and review of all pleadings and other matters of record, it is hereby ORDERED and DECREED that Condemnee's Petition is granted and that the Condemnor shall pay to condemnee's attorney the sum of $27,689.60 as reasonable legal fees on the tardy payment set forth in the Condemnee's Petition. The Condemnor's compliance with this Order is subject only to the final disposition of the issue as to whether the Board of Viewers rightfully retained jurisdic-

tion in this matter to which issue there currently is pending, before this Court, the Condemnor's Preliminary Objections To The Amendment To Petition For Appointment of Viewers.

DOT filed an appeal to this Court on August 31, 1989 from Martin, J.'s August 16, 1989 order.[6]

At a time not revealed in the record, the trial court, Scheib, J., addressed the preliminary objections to the asserted contractual claims in Pikur's Amendment to Petition for appointment of Viewers. On November 29, 1989, Scheib, J., entered an order, as herein relevant, which stated, "The Court, therefore must agree with the Defendant that it lacks jurisdiction to dispose of this matter and that it does grant Defendant's Preliminary Objections." Scheib, J., on December 14, 1989 granted Pikur's petition for reconsideration of the trial court's November 29, 1989 order and on April 10, 1990, entered an order that "[T]his Court does hereby deny Plaintiff's Petition, the order of November 29th, 1989 shall remain unchanged." Pikur, on April 12, 1990, filed an appeal from the trial court's April 10, 1990 order.

Upon review of the record before us, and for the reasons hereinafter set forth, we hold (1) that the trial court had jurisdiction under the Code of all claims arising out of the Agreement of Settlement between the parties; and (2) that the trial court improperly heard, considered and decided Pikur's "Petition For In Limine Determination." Accordingly, we reverse the order of the trial court by Scheib, J., dated November 29, 1989, vacate the order of the trial court by Martin, J., dated August 16, 1989, and remand this matter to the trial court to hear the appeals of Pikur and DOT from the May 1, 1989 Supplemental Report of Viewers. We will address the jurisdiction issue first.

6. The appeals of Pikur and DOT from the Viewers' Supplemental report of May 1, 1989 which were scheduled for trial on the January 1990 trial list were continued by order of the trial court "until the preliminary objections shall have been finally adjusted."

*Pikur v. DOT*

*860 C.D. 1990*

Jurisdiction is of two sorts: jurisdiction of the subject matter in the case, and jurisdiction of the parties involved.[7] An objection to lack of subject matter jurisdiction can never be waived; it may be raised at any stage of the proceedings by the parties or by a court on its own motion. *Daly v. School District of Darby Township,* 434 Pa. 286, 252 A.2d 638 (1969). The test of whether the courts have subject matter jurisdiction is whether the court has the power to determine controversies of the general class to which the case belongs. *Whitney v. Lebanon City,* 369 Pa. 308, 85 A.2d 106 (1952). It admits of no argument that the courts have the power to hear claims sounding in contract as are the claims of Pikur under the "Agreement of Settlement." The fact that a party to a contract may have an administrative remedy does not necessarily deprive the court of jurisdiction. In such cases the courts are deprived of subject matter jurisdiction only if the administrative remedy is exclusive. *Nagle v. American Casualty Co.,* 317 Pa.Superior Ct. 164, 463 A.2d 1136 (1983).

At first blush, it would appear that since the legislature has given to the Board of Claims [8] exclusive jurisdiction to hear and determine all contract claims against the Commonwealth in excess of $300.00, the court has been stripped of the power to hear such claims. Pikur maintains that jurisdiction in the present case lies with the trial court and the Viewers. Pikur argues that to hold that jurisdiction over Section 1–501 [9] agreements lies with the Board of Claims would bifurcate enforcement of such settlement

7. Jurisdiction over the parties is not herein at issue.

8. *Supra,* footnote 3.

9. Section 1–501, 26 P.S. § 1–501, provides:
   At any stage of the proceedings, the condemnor and the condemnee may agree upon all or any part or item of damages, and proceed to have those parts or items thereof not agreed upon assessed as herein provided. The condemnor may make payment of any part or item thereof so agreed upon.

agreements removing only those "contractual" aspects in condemnations by the Commonwealth from operation of the Code, but not those by local authorities. To so hold, Pikur asserts, would thwart legislative intent. We agree.

Section 1–303 of the Code, referring to intent of the act, states:

It is intended by this act to provide a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages therefor....

Thus, by its enactment, the legislature intended the Code to be the exclusive method to govern eminent domain proceedings. 26 P.S. § 1–303; *see Lerro v. Department of Transportation*, 32 Pa.Commonwealth Ct. 372, 379 A.2d 652 (1977).

The Code specifically authorizes parties to enter into agreements as to "all or any part or item of the damages" at "any stage of the proceedings" as cited *supra.* 26 P.S. § 1–501. In Section 1–401, the Code establishes the jurisdictional law and procedure in condemnation cases, stating:

All condemnation proceedings shall be brought in the court of common pleas of the county in which the property is located....

The comment following Section 1–401 indicates that "[t]he purpose of this section is to make the law uniform in the matter of jurisdiction."

The Statutory Construction Act of 1972 (Act), 1 Pa.C.S. §§ 1501–1991, reinforces this position. Section 1933 of the Act provides that where a general provision conflicts with a specific provision in the same or another statute, the specific provision shall prevail. The general provisions of 72 P.S. § 4651–4 require that all contract claims against the Commonwealth which exceed $800.00 be heard by the Board of Claims. Conversely, it is specifically indicated that the Code is intended to provide "complete and exclusive procedure and law to govern all condemnations." 26 P.S. § 1–303. The Code also specifically states, expressly and unambiguously, that the court of common pleas is vested with

jurisdiction over disputes in condemnation proceedings. Such specific provisions must prevail over the generalized language in Section 4651-4. 1 Pa.C.S. § 1933.

Furthermore, a review of Section 1-303 reveals that that section references specific exceptions for jurisdiction with respect to the Public Utility Commission, State Mining Commission, and any act which provides for "assessment of benefits for public improvements." We note that the legislature references no such exception for jurisdiction to the Board of Claims.

Based upon the foregoing analysis, the trial court does have jurisdiction by virtue of the legislative intent expressed in the Code. Thus, the trial court erred in determining that it lacked jurisdiction.

### DOT v. Pikur

#### 1744 C.D. 1989

■ DOT argues here that Pikur's Petition In Limine is not a proper procedure to initiate a contract or eminent domain case against a Commonwealth agency. We agree. For the several reasons hereinafter set forth, we vacate the trial court's order of August 16, 1989, by Martin, J.

■ An in limine motion is a motion or petition submitted to the court in a pending matter either pretrial or during trial whereby exclusion is sought of anticipated prejudicial evidence, keeping extraneous issues out of the underlying proceeding, precluding reference to prejudicial matters, or preventing encumbering the record with immaterial matter. A trial court may or may not in its discretion, entertain such in limine motions and the denial thereof cannot in and of itself constitute reversible error since those matters seeking to be precluded have not been presented to the factfinder and may never reach the factfinder. *See* 75 Am.Jur.2d *Trial* § 165 (1974); 60 C.J.S. *Motions and Orders* § 2 (1969); Black's Law Dictionary 787 (6th Ed.1991); 21A Words and Phrases, "In Limine" (1991).

Pikur's Petition In Limine seeks not a determination, pretrial or during trial, for preclusion of matter upon the trial of the merits of its claim for attorney's fees, but instead seeks a final determination by the trial court of its entitlement to 40% attorney's fees according to its interpretation of the Agreement of Settlement. Our research has failed to reveal any authority, in our or any other jurisdiction, for such use of a petition in limine; neither has Pikur in its brief revealed any such authority.[10] Further, there is nothing in the Code nor in the Rules of Civil Procedure which provides for the determination of claims on the merits by a proceeding characterized as a "Petition For In Limine Determination."

Additionally, Pikur's Petition In Limine states that it filed its Amended Petition for appointment of Viewers on June 3, 1988 in which it sought, *inter alia*, reasonable attorney's fees as provided for in the Agreement of Settlement; that DOT paid the $24,876.00 on September 15, 1988; that DOT paid the 59³⁄₇ weeks interest due in the amount of $44,348.00 on February 27, 1989. The record does not reveal when the Viewers conducted a hearing(s) on the Amended Petition for Appointment of Viewers. The Viewers did file a supplemental report on May 1, 1989. Pikur should have presented the claim it asserts in its Petition In Limine to the Viewers since Pikur was aware of the payments made on September 15, 1988 and February 27, 1989 and the provisions for counsel fees in the Agreement of Settlement prior to the filing by the Viewers of their supplemental report on May 1, 1989.

■ Further, both Pikur and DOT appealed to the trial court from the Viewers' supplemental report. Appeals from a viewer award are heard *de novo*. *Tinicum Real Estate Holding Corp. v. Department of Transportation*, 480 Pa. 220, 389 A.2d 1034 (1978); *Stoner v. Metropolitan*

10. Pikur cites *Jennings v. Department of Transportation*, 38 Pa.Commonwealth Ct. 206, 395 A.2d 582 (1978) as authority in support of its Petition In Limine. Without burdening this opinion further, suffice to say *Jennings* is inapposite and Pikur's reliance thereon is misplaced.

*Edison Co.*, 439 Pa. 333, 266 A.2d 718 (1970); *Manganese Steel Forge Co. v. Department of Highways*, 421 Pa. 67, 218 A.2d 307 (1966). The appropriate method for the determination of Pikur's entitlement to attorney's fees under the Agreement of Settlement is in the pending appeal from the Viewers' supplementary report not by a "Petition For In Limine Determination."

As has been established in the first part of this opinion (860 C.D. 1990), the Code provides a complete and exclusive means for governing eminent domain proceedings. Our review yields no reference to an in limine procedure under the Code. This Court has continually determined that causes of action, rules of procedure and pleadings which try to circumvent the Code are improper. *Borough of Jefferson v. Bracco*, 113 Pa.Commonwealth Ct. 223, 536 A.2d 868 (1988), *appeal denied* 522 Pa. 597, 562 A.2d 321 (1988); *Appeal of Edgewood Building Company, Inc.*, 43 Pa.Commonwealth Ct. 91, 402 A.2d 276 (1979); *Department of Transportation v. Ambrosia*, 24 Pa.Commonwealth Ct. 8, 354 A.2d 257 (1976). *See also, Milford Traumbauersville Area Sewer Authority v. 0.753 Acres of Land*, 25 Pa.Commonwealth Ct. 13, 358 A.2d 450 (1976). Filing a Petition for In Limine Determination as an attempt to obtain reasonable attorney's fees as contemplated in the Agreement of Settlement certainly falls within the realm of procedures which improperly attempt to circumvent the Code.

## ORDER

AND NOW, this 21st day of August, 1991, it is ORDERED as follows:

### 860 C.D. 1990

1. The order of the trial court dated November 29, 1989 is reversed; jurisdiction over claims arising out of the Agreement of Settlement between the parties lies with the trial court.

*1744 C.D. 1989*

2. The order of August 16, 1989 is vacated.

3. This matter is remanded to the trial court for determination of the appeals of Pikur Enterprises, Inc. and the Department of Transportation from the May 1, 1989 Supplemental Report of the Board of Viewers.

Jurisdiction relinquished.