652 A.2d 317

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Thomas C. GORDON.**

Superior Court of Pennsylvania.

Argued Sept. 8, 1994.

Filed Dec. 27, 1994.

Mary B. Seiverling, Deputy Atty. Gen., Harrisburg, for the Com., appellant.

Michael Dennehy, Danville, for appellee.

Before CAVANAUGH, KELLY and BROSKY, JJ.

BROSKY, Judge.

These appeals are from orders of the trial court which granted appellee's motion *in limine* and denied appellant–Commonwealth's motion for allowance of evidence. The sole issue presented for our review is whether the trial court erred in refusing to allow the Commonwealth to introduce evidence at appellee's trial relating to criminal acts he perpetrated on other victims. In addition, appellee has filed a motion to quash the appeals. For the reasons set forth below, we deny the motion to quash and reverse the orders entered by the trial court.

Before addressing the Commonwealth's allegation of error, it is necessary to recount the relevant facts of this case. In 1991, appellee, Thomas Gordon, Esq. was employed in the Montour County Public Defender's Office on a part-time basis. In early October of that year, appellee met with his client, the female victim, at her residence to discuss her eligibility for representation by the public defender and matters pertaining to her defense. Appellee allegedly arrived earlier than the designated appointment time and was admitted to the victim's home. Although appellee initially sat on the opposite end of the sofa in the living room, the victim indicated that he soon moved closer to her and began fondling her hair and the back of her neck. Appellee then allegedly placed his hand on the victim's right breast as he reached for an application which she had completed. The victim stood up and went to the kitchen to escape appellee's attentions. When the victim emerged from the kitchen, appellee was again seated on the sofa. No further contact between the victim and appellee occurred at this time due to the fortuitous arrival of the victim's boyfriend.

On October 23, 1991, the victim again met with appellee regarding her case; this meeting took place in the courtroom of the Montour County Courthouse. While reviewing paperwork at the counsel table, appellee allegedly positioned himself behind the victim and began rubbing his penis against her

buttocks and leg. The victim moved away from appellee but he continued to follow her and repeat his behavior until another person entered the courtroom. Because appellee was representing the victim, she did not disclose these incidents at the time they occurred. However, in June of 1993, appellee was charged with committing indecent assault as a result of these incidents.[1]

A preliminary hearing was held following which the district justice bound appellee over for trial based on the incident at the victim's home. Although the magistrate initially dismissed the offenses arising out of the courtroom incident, these charges were refiled by the Commonwealth. All of the offenses were later consolidated for trial.

Appellee subsequently filed an omnibus pre-trial motion in which he sought, *inter alia*, to preclude the Commonwealth from referring to or otherwise introducing evidence relating to three similar incidents which had occurred in Columbia County.[2] On December 29, 1993, the trial court issued an order granting appellee's motion *in limine*.[3] Despite granting appellee's request, the trial court indicated that it would accept an offer at trial by the Commonwealth regarding the evidence of the three Columbia County incidents, at which time the court would consider whether the evidence fell within the common plan exception and whether the probative value of the testimony would outweigh any prejudicial impact to the defendant.

1. 18 Pa.C.S.A. § 3126(a).

2. Appellee maintained a practice in both Montour and Columbia counties. The incidents in Columbia County were perpetrated on three females within a year after those allegedly performed on the victim in this case. Two of these women had a marital or romantic relationship with men who were clients of appellee; the third victim sought appellee's advice with respect to her impending divorce. Appellee was convicted of three counts of indecent assault regarding the Columbia County victims in August, 1993.

3. For reasons which do not appear of record, this order was not entered on the docket until February 8, 1994. Although this order was filed on February 8th, we will refer to this order as the December 29th order for clarity and ease of discussion.

When trial was scheduled to begin on February 8, 1994, the Commonwealth filed a motion requesting admission of the Columbia County incidents in accordance with the December 29th order. The trial court denied the Commonwealth's request and this order was duly entered upon the docket on February 9, 1994.[4] The Commonwealth thereafter filed appeals from both of the trial court's orders.[5] Appellee subsequently filed a motion to quash the appeals. Disposition of the motion was deferred, and the parties were directed to address this matter at oral argument. Hence, this motion is now properly before us for resolution.

In the brief filed in support of his motion to quash, appellee suggests that the appeal from the December 29 order is untimely. Appellee further contends that the Commonwealth should not be permitted to appeal because it failed to follow the procedures set forth in Pa.R.A.P., Rule 301(e), 42 Pa. C.S.A. After reviewing appellee's arguments and the pertinent rules, we disagree with appellee and conclude that the appeal is timely.

Rule 903(a) of the Pennsylvania Appellate Rules of Procedure provides that·"[e]xcept as otherwise prescribed by this rule, the notice of appeal required by Rule 902 (manner of taking appeal) shall be filed within 30 days *after the entry* of the order from which the appeal is taken." Pa.R.A.P., Rule 903(a), 42 Pa.C.S.A. (emphasis added). *See also* 42 Pa.C.S.A. § 5571(b) (an appeal from a court to an appellate court must be commenced within 30 days after the entry of the order from which the appeal is taken, in the case of an interlocutory or final order). The appellate rules further define the manner for determining the date of entry of an order as follows:

Except as otherwise prescribed in this rule, in computing any period of time under these rules involving the date of entry of an order by a court ..., the day of entry shall be

4. This order will be referred to as the February 8th order.

5. The appeal from the December 29th order is docketed at No. 00468 Philadelphia 1994; the appeal from the February 8th order is docketed at No. 0469 Philadelphia 1994. The appeals were subsequently consolidated for review.

the day the clerk of the court ... mails or delivers copies of the order to the parties, or if such delivery is not otherwise required by law, the day the clerk ... makes such copies public. The day of entry of an order may be the day of its adoption by court ..., or any subsequent day, as required by the actual circumstances.

Pa.R.A.P., Rule 108(a)(1), 42 Pa.C.S.A. As instructed by this rule, we must accordingly determine whether the clerk of court was required by law to deliver or mail copies of the order to the parties. We must necessarily direct our attention to the Rules of Criminal Procedure to answer this question, as the instant matter is a criminal rather than civil action. With respect to this issue, Rule 9024 provides:

Upon receipt of an order from a judge, the clerk of court shall immediately docket the order and record in the docket the date it was made. The clerk shall forthwith furnish a copy of the order, by mail or personal delivery, to each party or attorney, and shall record in the docket the time and manner thereof.

Pa.R.Crim.P., Rule 9024, 42 Pa.C.S.A.[6]

Review of the certified docketing statement submitted to this court reveals that the clerk of courts did not enter the December 29th order on the docket and duly notify counsel and appellee until February 8, 1994. Accordingly, the day of entry of the trial court's December 29th order is technically February 8, 1994. Because the Commonwealth filed its appeal from this order on February 10, 1994, well within the 30 day period computed from the day of entry, the appeal from this order is timely.

**6.** The rule was amended in March 22, 1993. The 1993 amendment deleted the phrase "Except as may be provided by local rules" from the rule. The 1993 amendment is applicable in this instance since it governs those cases in which the determination of guilt occurs on or after January 1, 1994 and the orders were entered after this date. The rule was later renumbered Rule 9025 and the comment was revised in June 2, 1994, effective September 1, 1994. The renumbering and the revised comment are inapplicable since the instant orders were entered prior to the effective date thereof.

A contrary result is not mandated by this court's decision in *Commonwealth v. Dorman*, 272 Pa.Super. 149, 414 A.2d 713 (1979), as argued by appellee. At the time *Dorman* was decided in 1979, the Rules of Criminal Procedure did not require the clerk of courts to note in the docket the day of entry of the order and the day on which notice thereof was sent to the parties. *See Commonwealth v. Dorman*, 272 Pa.Super. at 154 n. 6, 414 A.2d at 716 n. 6. Since *Dorman* was decided the Supreme Court has promulgated Rule 9024 which, as we previously noted, imposes the notation/notification requirement. *See* Rule 9024, *supra*. Because the Rules of Criminal Procedure currently provide the courts as well as the parties with a clear method of determining when an order was entered, mailed, delivered or made public, the other alternative set forth in Rule 108(a), *i.e.*, the date on which the order was adopted by the court or any subsequent day required by the actual circumstances, need no longer be utilized to ascertain the day of entry of an order. Instead, the appellate courts now recognize that the entry date of an order is the day on which it is formally entered on the docket. *See, e.g., Commonwealth v. Cavanaugh*, 500 Pa. 313, 315, 456 A.2d 145, 146 (1983); *Commonwealth v. Bartley*, 395 Pa.Super. 137, 141, 576 A.2d 1082, 1083 (1990).[7]

The appeal also is not rendered untimely based on the Commonwealth's failure to follow the procedure outlined in Pa.R.A.P., Rule 301(e), 42 Pa.C.S.A. This rule provides:

Where the exigency of the case is such as to impel an immediate appeal and the party intending to appeal an adverse action is unable to secure the formal entry of an appealable order pursuant to the usual procedures, the party may file in the lower court and serve a praecipe for entry of an adverse order, which action shall constitute entry of an appealable order for the purposes of these rules.

7. In any event, *Dorman* does not support appellee's position. The *Dorman* court held that the date of entry was the day on which the judgment of sentence was entered on the lower court's docket. *Id.*, 272 Pa.Super. at 156, 414 A.2d at 717. We have reached an analogous conclusion here.

The interlocutory or final nature of the action shall not be affected by this subdivision.

Pa.R.A.P., Rule 301(e), 42 Pa.C.S.A. This provision was inapplicable here.

There is no indication that this case involved an exigency which impelled an immediate appeal, because the trial court had granted appellant the right to seek admission of the evidence at trial, notwithstanding the language contained in the trial court's initial order. *See* Transcript of Hearing on Omnibus Pre-trial Motions, 12/29/93 at 39. Appellant was therefore justified in delaying further action until the time of trial, at which time the proposed evidence could be presented to the trial court for a determination as to whether it satisfied the requirements for admissibility. Moreover, there is nothing in the record which justifies invocation of Rule 301(e) based on appellant's inability to secure formal entry of the order pursuant to the usual procedures. Compliance with Rule 301(e) was therefore not required in this instance.

■ It was likewise unnecessary for appellant to praecipe for entry of the order upon the docket pursuant to Pa.R.A.P., Rule 301(d), 42 Pa.C.S.A. The trial court advised appellant that introduction of the evidence could be sought at trial despite its decision to grant appellee's motion *in limine.* Transcript of Hearing on Omnibus Pre-trial Motions, 12/29/93 at 39. The December 29th order thus was not immediately appealable at the time it was issued because it neither terminated nor substantially handicapped the prosecution. *See* Pa.R.A.P., Rule 311(d), 42 Pa.C.S.A. (providing that the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth asserts that the order will terminate or substantially handicap the prosecution). Under these circumstances, appellant was not required to praecipe for entry of the December 29th order within thirty days after its issuance because the order was unappealable at that time.

We also note that appellee does not refer us to any precedent, nor are we aware of any such authority, which directs

that a party *must* praecipe for entry of an interlocutory or final order upon the docket. The rules instead only require a party to take such action in the event appellate review is sought. In the absence of any statute or rule compelling a party to praecipe for entry of an order upon the docket, we decline to impose such a requirement here.

We must next consider the propriety of the appeal from the February 8th order, as appellee's motion to quash raises this issue. Appellant initiated the appeal from this order on February 10, 1994, and therefore, this appeal was timely filed. Notwithstanding this fact, appellee intimates that this appeal should be quashed. Appellee's argument is premised upon his characterization of the Commonwealth's motion to allow the evidence as a motion for reconsideration of the December 29th order. Appellee thus believes that because no action was taken within 30 days after issuance of the December 29th order, the Commonwealth's subsequent motion to allow the evidence and the denial thereof were somehow rendered improper and unappealable.

We question whether the Commonwealth's motion for allowance of the evidence can be treated as a motion for reconsideration. Even were we to regard it as such, we nevertheless find no indication that the Commonwealth was precluded from seeking such relief. As previously discussed, the order of December 29th was an interlocutory order which was unappealable as of right pursuant to Pa.R.A.P., Rule 311(d), 42 Pa.C.S.A. The Commonwealth thus did not lose its right to seek reconsideration of the December 29th order more than 30 days after it had been issued. *See Commonwealth v. McMillan*, 376 Pa.Super. 25, 34, 545 A.2d 301, 305 (1988), *affirmed*, 523 Pa. 426, 567 A.2d 1043 (1990) (42 Pa.C.S.A. § 5505, which prohibits modification or rescission of any order within 30 days after its entry, does not apply to interlocutory orders; prior to entry of the judgment of sentence, the thirty day limit in § 5505 does not apply to reconsideration of interlocutory orders). The Commonwealth's motion was therefore correctly before the trial court for consideration and disposition.

■ Having determined that both of these appeals are proper, we deny appellee's motion to quash and accordingly proceed to address the issue raised by the Commonwealth.[8]

8. This court has jurisdiction to entertain these appeals pursuant to Pa.R.A.P., Rule 311(d), 42 Pa.C.S.A., since the Commonwealth has certified in good faith that the orders appealed from substantially handicap the prosecution. Although appellee disputes the Commonwealth's assessment of the effect of the orders, our Supreme Court has explicitly held that the Commonwealth's certification is not contestable. *Commonwealth v. Dugger*, 506 Pa. 537, 545, 486 A.2d 382, 386 (1985). The rule accords the Commonwealth an absolute right of appeal and this court may not make inquiry as to whether the suppression order does indeed substantially handicap the prosecution. *Id.*, 506 Pa. at 546–547, 486 A.2d at 386–387. *See also Commonwealth v. Luddy*, 532 Pa. 623, 627, 617 A.2d 315, 317 (1992) (following *Dugger* and recognizing that the Commonwealth has the right to appellate review of an adverse suppression ruling which terminates or substantially handicaps the prosecution). Moreover, the Supreme Court has held that the Commonwealth may appeal from adverse pretrial orders, such as a motion *in limine*, in the same manner as it may appeal adverse suppression orders. *Commonwealth v. Cohen*, 529 Pa. 552, 564–565, 605 A.2d 1212, 1218 (1992). While we acknowledge the concerns raised by our colleagues, our Supreme Court's decision controls our disposition, as we perceive no relevant distinction between this case and the Supreme Court's decision in *Cohen*. *See, e.g., Commonwealth v. Warrick*, 415 Pa.Super. 385, 392 n. 4, 609 A.2d 576, 580 n. 4 (1992), *allocatur denied*, 534 Pa. 639, 626 A.2d 1157 (1993) (as an intermediate appellate court, the Superior Court is bound by the decisions of the Pennsylvania Supreme Court; absent a legally relevant distinction between a previous decision by the Pennsylvania Supreme Court and a case before the Superior Court, we are obliged to follow the mandate of the prior Supreme Court ruling); *Commonwealth v. Smith*, 404 Pa.Super. 553, 559, 591 A.2d 730, 733 (1991), *reversed on other grounds*, 532 Pa. 177, 615 A.2d 321 (1992) (as an intermediate appellate court, we are not empowered to expand existing legal doctrines or enunciate new precepts of law).

We further note that the instant case does not appear to fall within the scenario described by the dissent in *Cohen*, where it was posited that the Commonwealth will improperly utilize the motion *in limine* process as an evidentiary testing device. *Commonwealth v. Cohen*, 529 Pa. at 568–569, 605 A.2d at 1220–1221 (Dissenting Opinion by Cappy, J.). This case involves a situation in which it was the defendant, rather than the Commonwealth, who filed the motion *in limine*. Confronted with the lower court's unfavorable ruling, the Commonwealth thus had the option of either taking an immediate appeal or risk proceeding to trial without all of its evidence. If the latter course was chosen, appellate review of the adverse ruling would have been foreclosed in the event of appellee's acquittal. The Commonwealth likewise could not postpone its decision to renew its evidentiary request during trial, since appeal from an unfavorable ruling would not have been permit-

The appeals will be considered together since the issue raised by the Commonwealth pertains equally to both. Appellant challenges the trial court's decision precluding references to or introduction of evidence regarding the Columbia County indecent assaults. We recognize that the admissibility of evidence is a matter vested in the sound discretion of the trial court, and that an appellate court may reverse only upon a showing that the trial court abused its discretion. *Commonwealth v. Seiders*, 531 Pa. 592, 596, 614 A.2d 689, 691 (1992); *Commonwealth v. Smith*, 431 Pa.Super. 91, 96, 635 A.2d 1086, 1089 (1993). We will evaluate the trial court's decision in accordance with this precept.

 Appellant argues that the evidence fell within the common scheme, plan or design exception to the general rule which prohibits admission of other crimes or wrongs committed by the accused.[9]

> A determination of whether evidence is admissible under the common plan exception must be made on a case by case basis in accordance with the unique facts and circumstances of each case. However, we recognize that in each case, the trial court is bound to follow the same controlling, albeit general, principles of law. When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator.

ted. *Commonwealth v. Cohen*, 529 Pa. at 557, 605 A.2d at 1215 (once a jury is sworn, jeopardy attaches and the Commonwealth will not be permitted to appeal an adverse evidentiary ruling during the trial).

**9.** Events during trial may cause the evidence to fall within one or more of the other exceptions. Because trial has not yet occurred, we express no opinion regarding the admissibility of the evidence pursuant to any other exception.

*Commonwealth v. Smith,* 431 Pa.Super. at 96, 635 A.2d at 1089 (quoting *Commonwealth v. Frank,* 395 Pa.Super. 412, 421–422, 577 A.2d 609, 614, *allocatur denied,* 526 Pa. 629, 584 A.2d 312 (1990)).

Comparison of the conduct giving rise to the offenses in this case and the conduct in the Columbia County proceeding discloses the following similarities: (1) appellee strategically placed his female victims in a standing position for the ostensible purpose of reviewing court-related documents or matters; (2) while the victims were thus occupied and focused on the materials, appellee positioned himself behind the women and began rubbing his penis against their buttocks/thighs/legs; (3) despite their efforts to move away from appellee, appellee continued his conduct and followed the women about the table or desk until the victims were either able to sit down or leave, or a third-party interrupted; (4) the conduct occurred during the course of an attorney-client relationship with the victims, at a time when the victims were emotionally vulnerable and dependent upon appellee for advice and assistance with their legal problems; (5) the incidents occurred while the women were alone with appellee; (6) the victims were fearful of resisting or advising anyone of this behavior because they did not want to jeopardize either their own case or appellee's representation of their husband or boyfriend and (7) the offenses here occurred less than one year before the Columbia County incidents.

The above factors are not confined to insignificant details that would likely be common elements regardless of who committed the crimes. Instead, the implementation of the crimes was so similar as to constitute appellee's signature. All the incidents arose out of appellee's exploitation of his attorney-client relationship with the victims. Moreover, appellee was able to strategically position himself and his victims so that he was able to engage in this particular sexual behavior for his own gratification. The conduct perpetrated on the victims, *i.e.,* appellee rubbing his penis against the victims' buttocks/thighs/legs was also identical in each instance. Further, the chance that there are two attorneys in

the Montour–Columbia County area perpetrating this particular type of sexual abuse is miniscule. The offenses were additionally committed within one year. We therefore conclude that there is a logical connection between the Columbia County crimes and those at issue here so as to permit the evidence to be introduced under the common plan exception.[10]

**10.** *Compare Commonwealth v. Rush*, 538 Pa. 104, ——, 646 A.2d 557, 561 (1994) (evidence admissible pursuant to common plan where: the defendant lived in the same building as his victims and gained access to their apartments by ringing the doorbell; both female victims were African–American, relatively young and were attacked in their bedrooms while alone; both victims were repeatedly stabbed and had their undergarments removed; and in each instance the defendant ransacked the victims' apartments, took only valuables therefrom, cleaned the knives used in the stabbings but left the knives at the scenes); *Commonwealth v. Hawkins*, 534 Pa. 123, 129–130, 626 A.2d 550, 553–555 (1993) (prior murder conviction was inadmissible under common plan exception where the murders were accomplished by different methods of strangulation, different weapons were used to inflict wounds on the victims, and one of the killings indicated that it was intentional whereas the other suggested that the death was accidental); *Commonwealth v. Seiders*, 531 Pa. at 596, 614 A.2d at 691 (prior convictions involving indecent assault with two sisters, ages 6 and 7, did not fall within common scheme exception where there was sparse testimony regarding prior offenses and proof of the prior crimes did not naturally tend to prove the one for which the defendant was then being tried); *Commonwealth v. Newman*, 528 Pa. 393, 400, 598 A.2d 275, 278–279 (1991) (common design exception was satisfied where both crimes occurred in the X-ray department of a hospital at night, both victims were females suffering from head injuries, and the incidents began with the defendant kissing and hugging the victims and fondling their breasts before raping them); *Commonwealth v. Hughes*, 521 Pa. 423, 459–460, 555 A.2d 1264, 1282–1283 (1989) (evidence of another crime fell within common plan exception where both offenses were committed during the day on young females who were members of a racial minority and who knew the defendant; the offenses were implemented in a similar manner in that the defendant took the victims to an upstairs bedroom of a vacant building, asked them to undress, raped them and perpetrated other sexual acts before manually strangling them); *Commonwealth v. Smith*, 431 Pa.Super. at 98–99, 635 A.2d at 1090 (evidence of other crimes fell within common plan exception where the defendant sexually molested his daughters from the time they were young children until they reached their teenage years; the defendant's conduct established a repeated pattern of sexual abuse); *Commonwealth v. Frank*, 395 Pa.Super. at 425–428, 577 A.2d at 616–617 (evidence of other crimes fell within common plan exception where the incidents arose out of the defendant-therapist counseling the victims during a time in their adolescence when they were experiencing emotional, psychological or behavioral difficulties; the victims were always alone when they met with the defendant; the crimes began with the victims seated on the

 We must next determine whether the probative value of the evidence outweighs its prejudicial impact on appellant. *Commonwealth v. Seiders*, 531 Pa. at 596, 614 A.2d at 691; *Commonwealth v. Smith*, 431 Pa.Super. at 97, 635 A.2d at 1089; *Commonwealth v. Frank*, 395 Pa.Super. at 421–422, 577 A.2d at 614. In conducting this analysis, the potential prejudicial impact of the evidence must be balanced against such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence in their deliberations. *Commonwealth v. Smith* and *Commonwealth v. Frank, supra.*

As previously discussed, there were sufficient similarities between the instant offenses and the Columbia County incidents to warrant admission pursuant to the common plan exception. Moreover, the Commonwealth has demonstrated a need for the evidence, since appellee will undoubtedly assail the victim's credibility through the use of the victim's prior criminal history, her failure to make a prompt complaint regarding the conduct or her apparent acquiescence in the acts by failing to resist at the time they occurred. Appellee might further attempt to show that the victim was mistaken regarding the nature of the acts. As in all cases where evidence of prior crimes/bad acts is admitted, undue prejudice to the defendant can be eliminated by adequate and proper jury instructions regarding the limited purpose for which the evidence can be considered.

 In concluding that the Columbia County crimes did not fall within the common plan exception, the trial court placed undue emphasis upon the location of the offenses and did not adequately consider the pertinent similarities between the Columbia county offenses and the crimes charged here.[11]

defendant's lap, and after several counseling sessions, the nature of the sexual acts progressed; and the victims did not report the incidents because they were dependent upon the defendant's assistance).

11. The situs of the crimes is but one factor to be evaluated and may be entitled to greater or lesser weight depending upon the particular facts

The trial court further did not discuss any of the relevant factors in assessing the Commonwealth's need for the evidence. Under these circumstances, the trial court abused its discretion by neglecting to apply the correct standard in determining that the evidence was inadmissible under the common plan exception and that the prejudicial impact outweighed the probative value of the evidence. We accordingly reverse the trial court's decision precluding the Commonwealth from introducing evidence of the Columbia County incidents.[12]

Orders reversed. Motion to quash denied.

KELLY, J., files a concurring statement.

CAVANAUGH, J., files a dissenting opinion.

KELLY, Judge, concurring:

I join Judge Brosky's well reasoned memorandum admitting the evidence regarding appellee's, Thomas C. Gordon's, other crimes or wrongs under the common scheme, plan, or design exception to the rule which generally prohibits the admission of such evidence. The Commonwealth's appeal is properly before this Court. Our Supreme Court has held that the Commonwealth may directly appeal adverse orders from motions *in limine* which exclude evidence when the Commonwealth certifies that the exclusion terminates or substantially handicaps its prosecution because such orders "are final in the same way as suppression orders...." *Commonwealth v. Cohen*, 529 Pa. 552, 559, 605 A.2d 1212, 1216 (1992). *See*

of the case. In this instance, the location of the offenses appears to have been relatively unimportant in that appellee perpetrated the assaults wherever and whenever he was able to be alone with his victims in his professional capacity. However, the nature of the acts performed and the method of implementing the crimes discloses the previously discussed similarities. When viewed as a whole, the striking similarities between the offenses outweigh the differences in location.

12. We express no opinion regarding the admissibility of appellee's convictions for the Columbia County crimes, although such evidence may be admissible for impeachment purposes provided that the necessary requisites have been met. *See generally*, L. Packel & A. Poulin, *Pennsylvania Evidence*, § 609–§ 609.1 (1987) (discussing the use and admissibility of a defendant's convictions for impeachment).

*Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963). I write separately, however, to express my concern about the issues raised by Judge Cavanaugh in his enlightening dissent.

Currently, the Commonwealth possesses the potential to abuse the pre-trial motions process. I believe that Justice Cappy, in *Commonwealth v. Cohen, supra* 529 Pa. 552, 605 A.2d 1212, aptly explained the inherent problems in allowing the Commonwealth to directly appeal adverse orders from motions *in limine.* By concluding that the Commonwealth should not possess the absolute right to directly appeal adverse motion *in limine* rulings, Justice Cappy, in my opinion, correctly distinguished between orders which grant or deny motions *in limine* and those which suppress evidence. *See Commonwealth v. Cohen, supra,* 529 Pa. at 566–69, 605 A.2d at 1219–21 (Cappy, J., concurring). Thus, I respectfully request our Supreme Court to revisit this issue.

CAVANAUGH, Judge, dissenting:

While I appreciate the majority's careful and prudent consideration of this important issue, I am constrained to disagree since the present appeal represents a deviation from bedrock principles of appellate review which, if followed in other cases, could dramatically engender improper pre-trial appellate consideration of problematic evidentiary issues anticipated to arise at trial by the Commonwealth. Therefore, I must respectfully dissent.

Initially, I recognize that the majority is facially correct in finding both appeals are properly before this Court. The case *Commonwealth v. Cohen,* 529 Pa. 552, 605 A.2d 1212 (1992), grants the Commonwealth a pre-trial right of appeal from rulings *in limine* which it certifies has the effect of terminating or substantially handicapping its prosecution. *Id.* at 557, 605 A.2d at 1215. I differ, however, with the majority's analysis stating that the Commonwealth's motion was correctly before the trial court for consideration and disposition. I believe that the majority's analysis allows the Commonwealth, by filing *pre-trial* a motion concerning the appellee's Columbia

County convictions, to obtain a ruling by this Court which should otherwise not be available. I find the case *sub judice* represents an abuse of the *Cohen* doctrine [1] in that the Commonwealth did not comply with the trial court's December 29 ruling.

In *Commonwealth v. Pikur Enterprises*, 142 Pa.Commw. 114, 596 A.2d 1253 (1991), the Commonwealth Court set forth the proper definition of an *in limine* motion as:

> An in limine motion is a motion or petition submitted to the court in a pending matter either pretrial or during trial whereby exclusion is sought of anticipated prejudicial evidence, keeping extraneous issues out of the underlying proceeding, precluding reference to prejudicial matters, or preventing encumbering the record with immaterial matter. **A trial court may or may not in its discretion, entertain such in limine motions and the denial thereof cannot in and of itself constitute reversible error since those matters seeking to be precluded have not been presented to the factfinder and may never reach the factfinder.**

*Id.* at 127, 596 A.2d at 1259 (emphasis added).

In the case *sub judice*, the defendant/appellee successfully obtained the *in limine* order precluding evidence of his Columbia County convictions from being introduced at the pending Montour County trial. Presiding Judge Greevy, in his December 29 disposition of appellee's motion *in limine*, correctly opined that "if the Prosecution can show common scheme, plan, or design, or motive, **the Court will receive an offer at trial,** and determine whether the probative value of such testimony outweighs the prejudicial impact . . ." (emphasis added).

I believe the Commonwealth disregarded the court's ruling and did not follow proper *in limine* practice. Instead of

---

1. I note that in *Cohen,* the proffered evidence for the pending trial related to the existence of a child and applicability of the collateral estoppel doctrine. On appeal to our Supreme Court, both disputed evidence issues in *Cohen* were resolved using existing records and basic principles of law. In the case at bar, a proper decision requires the trial court during trial to hear all the relevant evidence and for contestants to make detailed offers of proof in the trial setting.

waiting to make an offer of proof at trial, as instructed by the court, the Commonwealth, seeking to introduce appellee's Columbia County convictions, presented the court with a pre-trial motion styled as a Motion for Allowance of Testimony. When the court refused to reverse its earlier December 29 ruling, the Commonwealth took the present appeal. I believe that the proper *in limine* practice would have been for the Commonwealth to make an offer of proof at trial and achieve a ruling in that setting. Further, the *Pikur* case, *supra,* set forth correctly that denial of an *in limine* motion is not appealable where the issue may be re-presented to the fact finder at trial.[2]

The danger in this situation for this Court to act upon an *in limine* motion is that we have no way of understanding the full evidentiary impact of the proposed evidence. At trial, however, contestants can present such evidence in its totality with other relevant factual evidence. The hazards for this Court to rule upon an *in limine* motion are particularly acute

**2.** Our sister states have also noted that a denial of an *in limine* motion is not appealable since the evidentiary issue may be re-presented to the fact finder at trial. *Cf. State v. Hill,* 37 Ohio App.3d 72, 523 N.E.2d 894, 898 (1987), where the court stated:

A grant of a motion *in limine* does not determine the admissibility of the evidence under consideration, **but instead suspends questions about the subject until the court can determine under the circumstances whether the evidence would be admissible.** The grant is interlocutory, malleable in the discretion of the trial court.

*Id.* (emphasis added). *See Boyd v. State,* Ind., 494 N.E.2d 284, 303 (1986), where the court defined an *in limine* order as:

a temporary order to suspend or prevent the imposition of a subject into evidence without first having the court review the proposed subject outside the presence of the jury. If the court had granted the motions *in limine* when asked for, it would have delayed a ruling on the subject until the occasion arose for the offering of such evidence. **The granting of a motion *in limine* does not conclusively rule that that evidence will not be permitted.**

*Id.* (emphasis added). *See also Braden v. Hendricks,* Okl., 695 P.2d 1343, 1348 (1985), where the court stated:

If the evidence is excluded by an *in limine* ruling, the party seeking to introduce it must at trial—out of the hearing of the jury—make an offer to show for the record the essence of testimony sought to be elicited. **In this manner the trial court is afforded an opportunity to make its in-trial ruling upon the issue in contention.**

*Id.* (emphasis added).

in the present case. We are forced to speculate and to rule upon whether the scheme, plan or design for bizarre sexual conduct which occurred in Columbia County is similar to the sexual conduct that allegedly occurred in Montour County. I would therefore hold that the *Cohen* doctrine, *supra*, does not extend to *in limine* rulings on the admissibility of evidence where the Commonwealth, (appropriately) is given the opportunity to re-present the issue at trial.

The net result is that I would quash the appeal of these two orders. The first because it is not a final order, i.e. the order by its terms permitted reconsideration at trial. I would further quash the second because there is no provision in our law for the Commonwealth to seek a pre-trial order for the admission of testimony in order to create an appeal issue if denied.

For the foregoing reasons, I believe this present appeal should be quashed.